IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**JANE ANNE TEMPLETON**                                                                        **PETITIONER**

v.                              CIVIL NO.         3:09-CV-03018

**MICHAEL J. ASTRUE, Commisioner**
**Social Security Administration**                                                             **RESPONDENT**

**MEMORANDUM OPINION**

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), for review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 416(I) and 423.

**I.      Procedural Background:**

Plaintiff protectively filed a DIB application on November 22, 2004, alleging that she was unable to work since December 1, 2002 (Tr. 55-57). Plaintiff's application was denied initially and on reconsideration (Tr. 28-31). Pursuant to Plaintiff's request, the Social Security Administration (SSA or Agency) held a hearing de novo before an administrative law judge (ALJ) on October 26, 2006, at which Plaintiff, represented by counsel, appeared and testified (Tr. 314-363). The ALJ issued an unfavorable decision on March 28, 2007, finding that Plaintiff was not disabled within the meaning of the Act (Tr. 24, Decision). Plaintiff requested a review on the record on May 30, 2007 (Tr. 8-9). The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 13, 2009 (Tr. 4-6).

II.     **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

Plaintiff alleged on December 18, 2004 that she was disabled on December 1, 2002 due to chronic fatigue, depression, thyroid problems and hepatitis C (Tr. 70) slight weakness in her right arm and leg (Tr. 92) hip pain (Tr. 113).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into

the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id.*

The ALJ determined that exertionally, Plaintiff retained the residual functional capacity to perform light work, sitting six hours in an eight-hour workday with normal breaks, stand and/or walk six hours in an eight-hour workday with normal breaks (Tr. 18, Finding No. 5). Nonexertionally, Plaintiff was limited to only superficial contact incidental to work with the public and co-workers; where the work is learned by experience; which requires very little supervision for routine matters, and detailed supervision for non-routine matters; and where Plaintiff is able to utilize judgment within limits (Tr. 18, Finding No. 5). See 20 C.F.R. § 404.1567(b).

**Hepatitis C:**

Dr. Michael Penney, a radiologist at WRMC performed an ultrasound guided liver biopsy on Plaintiff on June 3, 2002. Dr. Penney noted that:

> Sections of benign liver show mild chronic hepatitis with focal minimal piecemaeal necrosis present. Inflammatory infiltrate is limited to protal areas. Bile ducts and vessels appear to be normal. With the aid of PAS and Trichrome stains there is periportal and sinusoidal fibrosis with focal early bridging fibrosis seen. No cirrhosis is identified. A special stain for iron show only forcal minimal iron present within the kupfer cells. (Tr. 151).

Abbas Raza, M.D., treated Plaintiff through 2002 for hepatitis C[1] (Tr. 130-135, 144-171). In June 2002, Dr. Raza diagnosed Plaintiff with mild chronic hepatitis, and started Plaintiff on a course of Interferon treatments (Tr. 151, 155). The treatments were effective (Tr. 156), but they were stopped because the side effects were causing Plaintiff to have symptoms of depression (Tr. 133).

In June 2004, Plaintiff was seen at the Washington University in St. Louis School of Medicine by Dr. Lisker-Melman. The letter from Dr. Melman to Dr. McGhee showed that her laboratory test in April, 2004 showed normal ALT, AST, total bilirubin, and synthetic function. The Plaintiff was tested with quantitative PCR and has been negative. Dr. Melman stated that he would repeat her hepatitis C molecular studies in two and five years before discharging her from the clinic. (Tr. 211). There is no indication of further treatment by Dr. Melman.

In August 2004, Plaintiff underwent a liver biopsy by Hanlin Wang, M.D. (Tr. 214). Dr. Wang reported that Plaintiff had the indicators for hepatitis, but that her liver function and viral assays were entirely negative (Tr. 214). In May 2007, Plaintiff underwent an examination by Safwan Sakr, M.D. (Tr. 308-312). Dr. Sakr reported that while Plaintiff had a history for hepatitis C, the results from her liver function tests were normal. (Tr. 308). Additionally, Plaintiff testified at the administrative hearing that her latest liver function test results were normal. (Tr. 352-353)

---

[1]Hepatitis C is an infection caused by a virus that attacks the liver and leads to inflammation. Most people infected with the hepatitis C virus (HCV) have no symptoms. In fact, most people don't know they have the hepatitis C infection until liver damage shows up, decades later, during routine medical tests. (Www.mayoclinic.com)

**Back Pain:**

Plaintiff testified that she had back pain that started when she took the Interferon treatments in 2002 (Tr. 344). In April 2007, Plaintiff presented to Brian Blair, M.D., complaining of back pain (Tr. 306-309). An x-ray examination showed that Plaintiff's lumbar spine had some degenerative changes, "however, no fractures or dislocation" (Tr. 307). Dr. Sakr reported that Plaintiff was neurologically intact, with no headaches, numbness or tingling in her hands or arms (Tr. 310). Dr. Sakr found that Plaintiff's straight leg raising was normal, and her range of motion was normal at all levels (Tr. 311).

**Chronic Fatigue:**

The Plaintiff contends that she is disabled because of chronic fatigue syndrome.[2] The Plaintiff first complained of this on May 16, 2002 to Dr. Raza. (Tr. 130). On June 27, 2002 the Plaintiff did consult with Dr. Furlow but chronic fatigue was not listed as a symptom. (Tr. 161-163). Fatigue was still alleged to be a problem on September 25, 2002 when the Plaintiff saw Dr. Raza. (Tr. 134-135). The Plaintiff was granted FMLA leave on September 18, 2002. (Tr. 136). When the Plaintiff sought counseling from Dr. Gene Chambers on September 25, 2002 she listed fatigue as one of the presenting problems. (Tr. 182).

A review of the medical records does not show that the Plaintiff was ever diagnosed with chronic fatigue syndrome by any of her treating physicians even though she did complain of fatigue and loss of sleep continually.

---

[2]Chronic fatigue syndrome (CFS) is a complicated disorder characterized by extreme fatigue that may worsen with physical or mental activity, but doesn't improve with rest. Although there are many theories about what causes this condition — ranging from viral infections to psychological stress — in most cases the cause is still unknown. (Www.mayoclinic.com).

**Depression:**

The Plaintiff began to develop symptoms of depression and anxiety shortly after she was diagnosed with Hepatitis C and after she ceased taking her prescribed medication. (Tr. 133. 134, 136,152, ).  The Plaintiff ultimately sought counseling with Dr. Gene Chamber from September 25, 2002 to April 21, 2003. (Tr. 173-192).  Dr. Chambers assessed a Global Assessment of Functioning of 53[3] on February 14, 2003. (Tr. 179).  After Dr. Chambers examined Plaintiff, he prescribed Zoloft, an anti-anxiety medication, which he reported was effective in helping Plaintiff control her anxiety and depression (Tr. 188, 191).

At the administrative hearing, Plaintiff testified that her symptoms of anxiety cleared up when she left a difficult employment situation (Tr. 333). Additionally, Plaintiff testified that her symptoms of depression were "reasonably steady," but that she had not sought any further treatment, and was not taking prescription medication (Tr. 342). The Plaintiff did assert that she cannot take strong pain medication because of the damage to her liver. (Tr. 344).

In fact, the record indicates that Plaintiff's last visit with Dr. Chambers, or any other mental health provider, occurred in April 2003 (Tr. 173). The ALJ noted the lack of consistent and regular treatment for her alleged mental impairment, and discounted Plaintiff's alleged level of severity (Tr. 21). *See Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (holding that the absence of hospitalizations due to health problems, limited treatment of symptoms, and failure to diligently seek medical care contradicted the plaintiff's alleged disability). *See Murphy v. Sullivan*, 953 F.2d 383,

---

[3]A GAF rating of 53 falls within the range of scores, fifty-one to sixty, that indicates moderate symptoms or functional difficulties in an individual's overall level of functioning. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. text revision, 2000).

386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). *Cole v. Astrue,* 2009 WL 3158209, 6 (W.D.Ark.) (W.D.Ark.,2009)

A mental RFC was obtained by the ALJ on March 1, 2005 performed by Dr. Jerry Henderson. (Tr. 225-244). Dr. Henderson noted that the Plaintiff was not significantly limited in her understanding and memory, and only moderately limited in her ability to carry out detailed instructions and concentration for extended periods. (Tr. 225). He also found her moderatley limited in the ability to complete a normal workday, accept instructionas and respond to criticism and set realistic goals. (Tr. 226). As a result Dr. Henderson noted that the Plaintiff had a mild degree of limitaion on her Restrictions of Activities of Daily Living and Difficulties in Maintaing Social Functioning and that she had a moderate degree of limitation on her Difficulties in Maintaining Concentration, Persistence, or Pace. (Tr. 240). No limitations were noted on her Episodes of Decompensation. (Id.)

**Thyroid Problems:**

The Plaintiff had a long history of thyroid related problems which began in 1996 with an enlarged thyroid. (Tr. 125-126). In August 2002, Linda McGhee, M.D., diagnosed Plaintiff with stress-related hyperthyroidism, which Plaintiff alleged was disabling (Tr. 28, 140). On October 29, 2003, Plaintiff underwent radioactive iodine thyroid ablation (Tr. 194).The Plaintiff was seen for

hyperthyroidism[4] on October 16, 2003 by Dr. McGhee. (Tr. 201). Plaintiff was seen again by Dr. McGhee on October 29, 2003 and noted that the Plaintiff had a history of several years of thyroid disease which waxed and waned but claimed that recently she had increasing symptoms including weight loss, eye twitching, some visual changes, slight tremor and some skin changes. Dr. McGhee prescribed 11.95 millicuries of I131 orally. The symptoms for hyperthyroidism is sudden weight loss, a rapid or irregular heartbeat, sweating and nervousness or irritability. (www.mayoclinic.com). When the Plaintiff saw Dr. Brian Blair on May 24, 2007 he noted that the Plaintiff had no double vision, no dryness or itching of the eyes or mouth and that the Plaintiff had no weight change. (Tr. 309). The Plaintiff also was negative for lymphnoid nodes or anemia. (Tr. 310). The ALJ assessed Plaintiff's diagnoses of stress-related hyperthyroidism, and determined that the condition was successfully treated (Tr. 16). Medical conditions that are effectively treated are not disabling. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).It does not appear that the Plaintiff's thyroid condition was a cause of her alleged disability but it may have contributed to her depression and anxiety as discussed above.

In this case, the ALJ reached his decision that Plaintiff was not disabled by the combination of her impairments only after careful consideration of the entire record and an evaluation of the combined effect of her impairments (Tr. 18, Finding No. 4). The record supports the finding by the ALJ.

---

[4] Hyperthyroidism (overactive thyroid) is a condition in which your thyroid gland produces too much of the hormone thyroxine. Hyperthyroidism can significantly accelerate your body's metabolism, causing sudden weight loss, a rapid or irregular heartbeat, sweating, and nervousness or irritability. (Www.mayoclinic.com)

**Subjective Complaints:**

When evaluating the credibility of Plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing her reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

The standard of evaluation is not whether Plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents her from performing any kind of work).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.*

Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

The Plaintiff indicated that she prepared her own meal and could perform house cleaning, laundry, small repairs and maintenance and limited yard work. (Tr. 86). A claimant's ability to perform household chores does not necessarily prove that claimant capable of full-time employment." *See Ekeland v. Bowen*, 899 F.2d 719, 722 (8th Cir.1990) (citing *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir.1989)). *Dixon v. Barnhart* 324 F.3d 997, 1002 (C.A.8 (Ark.),2003) The Plaintiff, however, also indicated that she was presently living at an RV park in Georgia where she did volunteer work for 24 hours per week in exchange for site rent free. (Tr. 84). The Plaintiff testified that her daily activities included volunteering as a camp ground attendant in a Georgia State Park for three to six months each summer, driving her Ford truck and fifth-wheel travel trailer, setting up her travel trailer each night when she traveled, wintering in Florida, cooking, and shopping. (Tr. 333-336, 337, 345, 347-350, 353).

Complaints of disabling impairments are not credible when Plaintiff's major life activities are not substantially limited by the alleged impairments. *Hepp v. Astrue*, 511 F.3d 798, 807 (8th Cir. 2008) (holding that the ALJ correctly questioned the plaintiff's credibility when the plaintiff testified he could drive up to an hour without pain, and performed household chores such as vacuuming, sweeping, mopping, cooking, and mowing the lawn). Therefore, the ALJ properly determined that Plaintiff's daily activities was inconsistent with her subjective complaints of disabling impairment (Tr. 20). *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (finding that plaintiff's claim of disabling pain was discounted because of his daily routine which included making breakfast, washing dishes, washing clothes, visiting friends, and watching television).

The court cannot find that any of the Plaintiff's treating physicians placed any functional restrictions on any of her activities. *Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999) (observing

that the lack of significant restrictions placed on plaintiff's activities by his doctors).

The ALJ considered that while Plaintiff complained of disabling pain, the medical record indicated that she used only over-the-counter medications, and hot showers (Tr. 17). A claimant's allegations of disabling pain may be discredited by evidence they have received minimal medical treatment and/or has taken only occasional pain medications. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007).

**Combined Effect:**

The regulations provide that in determining whether a claimant's impairment or impairments are of such severity that such impairment or impairments could be the basis of eligibility for benefits, the Commissioner will consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. See 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of the impairments will be considered throughout the disability determination process. Id. If a medically severe combination is not found, it will be determined that the claimant was not disabled. Id.

Therefore, although it is clear that plaintiff suffers from some degree of pain and discomfort, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

**Development of the Record:**

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). In determining whether an ALJ has fully and fairly developed the record the proper inquiry is whether the record contained sufficient evidence for him to make an informed decision. *See Payton v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994); *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).

Plaintiff asserts that the ALJ should have ordered a consultative examination by a rheumatologist. See Pl.'s Br. at 22. An ALJ is required to order consultative evaluations only if the available evidence does not provide an adequate basis for determining merits of a disability claim. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). The fact that the plaintiff did not allege rheumatoid arthritics as a basis for her disability in her application for disability benefits is significant, even if the evidence of rheumatism was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

There was no evidence in the record that indicated that Plaintiff was restricted due to symptoms of arthritis. (Tr. 17, 355). Plaintiff testified that she walked around the camp sites, picking up trash, and assisting other campers for a period of six months and that she had been doing this for a number of years. (Tr. 333-334, 339). Sarah Sullivan, M.D., Ph.D., examined Plaintiff in October 2005 (Tr. 258). Dr. Sullivan reported that Plaintiff's lumbar spine showed mild tenderness at T12-L1, but was otherwise pain free (Tr. 258). Dr. Blair saw the Plaintiff on May 24, 2007 and noted that there was no clinical evidence for inflammatory arthritis. (Tr. 311). The ALJ correctly found that Plaintiff's medical history adequately documented Plaintiff's alleged arthritis, and there was not a

need for a consultative examination (Tr. 17, 24).

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

IT IS SO ORDERED this 22nd day of January 2010.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES DISTRICT JUDGE